THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMY S. PEREA,

   Plaintiff,

v.                   CIV 01-1352 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

   Defendant.

# **MEMORANDUM OPINION AND ORDER**

  This matter is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing *(Doc. 9)*. Claimant Jimmy Perea appeals from Commissioner's denial of his application for social security disability insurance benefits. Having considered the briefs submitted by the parties and being fully advised in the premises, I find that the motion should be denied and the decision of the Commissioner affirmed. I have carefully reviewed the entire record and, rather than initially set forth the record in detail, I will refer specifically to the relevant evidence below in the context of the arguments raised in this appeal.

## **I. Standard Of Review**

  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992). My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d

799, 800 (10th Cir. 1991). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).

## II. Issues and Analysis

Claimant, currently age 53, filed his application alleging disability beginning April 19, 1997 due to diabetes and a stroke. The administrative law judge (ALJ) determined that Perea had several severe impairments, as that term is defined in the regulations, including longstanding insulin dependent diabetes melitis ("IDDM"), left-sided hemiparesis[1] and hypertension from a cerebrovascular accident ("CVA"). Whether considered singly or in combination, however, the ALJ found that these impairments did not rise to the level of a listed, or conclusively disabling impairment.

After reviewing the evidence and medical record, the ALJ concluded that Perea was unable to perform his past relevant work which included farming, and positions as a custodian and a pipefitter. Nevertheless, the ALJ found that Perea could perform light work and therefore determined that Perea was not disabled under the final step of the Commissioner's five-step sequential process for determining disability. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir.1988) (setting out process).

Perea alleges three errors in the decision of the administrative law judge (ALJ) at step five of the sequential evaluation: 1) the ALJ's finding that Plaintiff was capable of light work failed to

---

[1] Muscular weakness or partial paralysis. Dorland's Illustrated Medical Dictionary 746 (28th ed. 1994).

adequately consider his left-sided hemiparesis;  2) the light work finding is supported only by the opinion of a non-treating, non-examining physician; and 3) the ALJ failed to adequately develop the record and thereby denied Perea of his due process right to a full and fair hearing.   As discussed below, I find each of these arguments to be unavailing.

### *(A) The ALJ adequately considered Perea's left-sided hemiparesis and properly found Plaintiff capable of light work*

At step five of the analysis, the ALJ relied upon the "grids" in finding Perea capable of light work.  In order for these "grids" to be exclusively used, the vocational factors – residual function capacity, age, education and work experience – upon which the grids have been developed must accurately reflect the claimant's abilities.

> Automatic application of the grids is appropriate only where a claimant's residual functional capacity (RFC) and other characteristics (age, work experience, education) precisely match a grid category.  20 C.F.R., part 404, subpt. P, App. 2, § 200.00 (1987).   RFC is primarily a measure of  exertional capacity, i.e., strength.   Residual capacity, however, sometimes is curtailed by nonexertional limitations, such as postural or sensory limitations. Where such is the case, the grids may not be applied mechanically but may serve only as a framework to aid in the determination of whether sufficient jobs remain within a claimant's RFC range (sedentary, light, medium, heavy, and very heavy).  *Id.* at § 200.00(e)(2).

*Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988).  Plaintiff contends that the "ALJ's failure to consider the shoulder and arm impairment in making the light work finding, renders the application of the grids contrary to the evidence, and the law." *Doc. 10* at 7.  I respectfully disagree.

**(1)  The medical records relating to left-sided hemiparesis**

As the ALJ noted, Perea presented at University of New Mexico Hospital ("UNMH") on April 20, 1997 with symptoms including left facial numbness and left arm numbness. *Record* at

21. Perea was diagnosed has having suffered a transient ischemic attack ("TIA") or peripheral neuropathy. *Id.* at 168. One week later, he again visited UNMH emergency room complaining of left arm and shoulder pain. Id. at 174. At that time, Dr. Glenn D. Graham, a neurologist, diagnosed "acute right cerebral accident ["CVA"], most like . . . a subcortical lacune." *Id.* at 194.

Shoulder pain was again described to UNMH staff in early June 1997 for which he received a diagnosis of "frozen" shoulder which was reiterated after a follow-up orthopedic appointment on August 1, 1997. *Id.* at 188, 184. Additionally, the orthopedic physician, Dr. Fred F. Naraghi, diagnosed mild left carpal tunnel syndrome. *Id.* at 184. Physical therapy and patient notes indicate that in August and September Perea had "improved a great deal" but still had "a way to go" at to shoulder pain and range of motion. *Id.* at 200. In early October, however, Perea reinjured his shoulder while "working on his tractor," *id.* at 223, and yet again in mid-October "when he was loading pumpkins on a truck," *id.* at 224.

Perea continued to complain of shoulder pain and received an injection in the left shoulder in April 1998 to alleviate that pain. *Id.* at 247. In mid-October, however, Perea returned to UNMH complaining that his left arm had been in pain for two weeks and a Dr. Whipple was asked to "evaluate the patient for surgical potential." *Id.* at 253. The record contains no indication that this evaluation took place, however.

In fact, the 1999-2000 medical records primarily address complaints unrelated to left-sided hemiparesis. Notations to left-sided numbness or weakness reflect concerns of new TIA activity with such numbness occurring only a few times per day and resolving within minutes. *See id.* at 300-01, 313-14, 327 ("history of . . . stroke with minimal residual"). Indeed, a September 23, 1999 medicine clinic note finds that Perea was asymptomatic for his history of CVA. *Id.* at 336.

**(2) The credibility findings**

The ALJ found that when considering the record and testimony as a whole, Perea's symptoms are not totally disabling as alleged. *Id.* at 24. In combination with the medical evidence cited above, the ALJ referred to several reasons for discounting Perea's testimony and conclusion that the hemiparesis contributed to a finding of total disability.

Perea testified of daily activities including driving, yard work and irrigating fields. Indeed, the medical record reveals that Perea, despite his testimony, apparently engaged in regular strenuous activities. In addition to loading pumpkins on a truck and working on his tractor as noted above, Plaintiff repeatedly related his farming activity to his healthcare providers. *See, e.g., id.* at 344, 351 (on 7/2/99 – "was at work (heavy physical labor) when he had a sudden onset of lightheadedness" and "patient working in the hot sun"), at 398 (on 6/1/99 – Perea said that he was "doing pretty good" but "works hard on the farm and forgets to take his lunch or snack into the fields"). Indeed, the ALJ specifically noted that "claimant continued to perform at least part-time work farming from the date of his CVA to the time of his hearing. . . ." *Id.* at 24.

Although he complained of disabling pain, I agree with the ALJ's finding of "lack of any prescribed narcotic pain-relieving medication to be inconsistent . . . and to detract from those allegations." *Id.* at 6. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir.1988) (holding a claimant's inability to work pain-free does not require a finding of disability). Defendant correctly notes that the level of pain medication is one factor the ALJ should consider when evaluating the credibility of pain testimony. *See Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993). "Disability requires more than mere inability to work without pain. To be disabling, pain must be so severe . . . as to preclude any substantial gainful employment." *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir.1988)(quotation omitted).

Perea's work history also entered into the ALJ's assessment of credibility regarding the

extent of his limitations and pain. The ALJ specifically found that "significant breaks" in Perea's work history prior to the alleged date of disability onset "detract from the credibility of claimant's allegations." *Id.* at 24; *see also id.* at 85. Thus, the ALJ's credibility findings are closely and affirmatively linked to substantial evidence and are not merely conclusory, *see Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988)

Plaintiff also contends that "the only positive evidence to which the ALJ referred as support for the light work finding is the opinion of a non-treating, non-examining physician," and that this is "contrary to law" according to *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir.1987). *See Doc. 10* at 7. True,

> findings of a nontreating physician based upon limited contact and examination are of suspect reliability. *Cf. Broadbent*, 698 F.2d at 412-14. . . . Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence. *Brewster v. Heckler*, 786 F.2d 581, 585 (3rd Cir.1986) (residual functional capacity evaluation); *Green v. Schweiker*, 749 F.2d 1066, 1071 and 1071 n. 3 (3rd Cir.1984) (physical capacities evaluation forms).

*Frey*, 816 F.2d at 515. However, unlike *Frey*, this is not a case where "the ALJ erred in rejecting the treating physicians' testimony and reports" or disregarded the findings of treating physicians.

Perea maintains that "there are two opinions from treating doctors that Mr. Perea cannot work." *Doc. 10* at 8. Upon closer scrutiny, however, the relied upon opinions are not inconsistent with the agency physician's evaluation. On May 7, 1997, just two weeks after the alleged onset date of disability, treating neurologist Dr. Graham indeed wrote that Perea "is unable to work." *Doc. 10* at 5. Plaintiff omits the full quote, however, in which Dr. Graham said, "***At present***, he is unable to work." *Record* at 194 (emphasis added). Plaintiff also relies on a

January 20, 1998 note written by treating physician Judy Hoffstetter, M.D. Yet that note indicates only that "[h]e cannot complete **_his normal duties_** secondary to the stroke." *Id.* at 254. Neither of these treating physician notes reasonably can be said to support a finding of total disability as defined by the Social Security Act.

The opinions of physicians "who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir.1983) (quoting *Allen v. Califano*, 613 F.2d 139 (6th Cir.1980)). I don't believe that this means, however, that a report by a non-examining non-treating physician cannot, in conjunction with the rest of medical record, constitute substantial evidence supporting an ALJ's determination of residual functional capacity.

In sum, the ALJ's determination that Perea did not have any nonexertional limitation that would have significantly reduced the jobs he was capable of performing is supported by substantial evidence. Therefore, the finding that Perea could perform light work and reliance on the grid are not erroneous.

### (B) The ALJ fully and fairly developed the record

Plaintiff complains that the ALJ deprived him of a full and fair hearing by failing to adequately develop the record.

> The length, or brevity, of a benefits hearing is not dispositive of whether or not the ALJ met the heightened obligation to fully develop the record in a case where the claimant is unrepresented. We conclude that the more important inquiry is whether the ALJ asked sufficient questions to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities.

*Musgrave v. Sullivan*, 966 F.2d 1371, 1374-75 (10th Cir. 1992). I have thoroughly reviewed the transcript of the hearing and the ALJ met his obligation in this regard. Simply put, Plaintiff's arguments to the contrary are without merit.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing *(Doc. 9)* is DENIED and that an order pursuant to Rule 58 dismissing this action with prejudice be entered concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE